# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

TYNISHA JACKSON, DAVID CREVELING, MARY HANS, and GREG AIKENS, individually and on behalf of all others similarly situated,

        Plaintiffs,

    v.

VELOCITY INVESTMENTS, LLC,

        Defendant.

Case No. 20-cv-2524

## FIRST CONSOLIDATED CLASS ACTION COMPLAINT

Tynisha Jackson, David Creveling, Mary Hans, and Greg Aikens ("Plaintiffs") bring this action against Velocity Investments, LLC ("Velocity" or "Defendant"), and allege as follows:

## NATURE OF THE ACTION

1. This action is brought against Velocity for violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692, *et seq*., the Fair Credit Extension Uniformity Act ("FCEUA"), 73 P.S. §§ 2270.1, *et seq.*, the Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. §§ 201-1, *et seq*., and the Consumer Discount Company Act ("CDCA"), 7 P.S. §§ 6201, *et seq*., and for unjust enrichment and equitable relief.

## JURISDICTION AND VENUE

2. The Court has subject matter jurisdiction under 28 U.S.C. § 1331.

3. The Court also has subject matter jurisdiction under 28 U.S.C. § 1367.

4. Venue is proper under 28 U.S.C. § 1391.

5. The Court has personal jurisdiction over Velocity because Plaintiffs' claims arose in this district and Velocity does substantial business in this district.

## PARTIES

*Facts Relevant to Plaintiffs*

     6.     Plaintiff Jackson and Aikens reside in Berks County, Pennsylvania.

     7.     Plaintiff Creveling resides in Columbia County, Pennsylvania.

     8.     Plaintiff Hans resides in Lycoming County, Pennsylvania.

     9.     OneMain Financial ("OneMain") issued personal consumer loans (the "OneMain Accounts") to Plaintiffs.

     10.     Plaintiffs used the OneMain Accounts for personal, family, and/or household purposes, including moving expenses, medical bills, household bills, and car expenses.

     11.     The OneMain Accounts included unpaid interest and fees that were precomputed in amounts of 28.80% (Jackson), 26.51% (Hans). 26.45% (Creveling), and 26.69% (Aikens).

     12.     These rates increased when the OneMain Accounts were charged-off.

     13.     Velocity claims it purchased the OneMain Accounts on December 20, 2017 (Jackson), August 7, 2017 (Creveling), January 19, 2018 (Hans), and September 19, 2018 (Aikens).

*Facts Relevant To Defendant*

     14.     Velocity is a non-bank debt buyer located in Wall, New Jersey.

     15.     Velocity buys personal consumer loans from various non-bank finance companies (the "CDCA Lenders"), including OneMain and at least two other non-bank finance companies.

     16.     Velocity generally purchases these loans for pennies on the dollar.

     17.     For instance, Velocity buys loans from OneMain for around six cents on the dollar of the face value of the loan.

     18.     Velocity purchases loans for the sole purpose of collecting debt for profit.

19.     Velocity collects the loans it purchases, either directly or indirectly, by calling consumers, sending consumers letters, and filing lawsuits against consumers.

20.     Velocity uses the instrumentalities of interstate commerce to collect debt, including telephone, mail, and the internet.

## THE CONSUMER DISCOUNT COMPANY ACT

21.     The CDCA is a consumer protection law that regulates personal consumer loans in amounts of $25,000 or less. 7 P.S. § 6203.A.

22.     The CDCA prohibits non-banks from attempting to charge, collect, contract for, or receive interest and fees non-banks are not otherwise permitted by law to charge without a CDCA license. *Id.*

23.     The Loan Interest Protection Law ("LIPL") limits non-banks without CDCA licenses to charging no more than six percent simple interest on personal loans. 41 P.S. § 201(a).

24.     The CDCA applies this cap to the amounts non-banks can charge, collect, contract for, or receive. 7 P.S. § 6203.A.

25.     The CDCA also prohibits entities without a CDCA license from buying loans from CDCA licensees unless the Pennsylvania Department of Banking ("the Department") issues prior written approval. 7 P.S. § 6214.I; *see also* 7 P.S. 6208 (prohibiting assignment of CDCA license); 10 Pa. Code § 41.6(a) (prohibiting assignment of rights granted by a CDCA license).

26.     The Department issues prior written approval for unlicensed loan sales only when unlicensed entities forgo collecting or receiving previously charged or precomputed interest and fees in excess of the interest an unlicensed entity can or could have charged without a CDCA license. *See* Letter, Department of Banking, p. 22 (Nov. 11, 2001) (Exhibit 1) (stating unlicensed entities buying loans from licensees with written approval from the Department must "ensure

that every loan contract [they] acquire[] d[oes] not already include in the balance owed interest, fees and other charges in excess of the general usury limit"); Letter, Department of Banking, p. 3 (Sept. 18, 2003) (Exhibit 2) (stating transfer of loan from licensee to unlicensed entity would be approved only if unlicensed entity "collect[ed] from consumers the general Pennsylvania usury rate of 6% simple interest *per annum*"); Letter, Department of Banking, p. 1 (Exhibit 3) (Jan. 12, 2004) (approving transfer of loans from licensee to unlicensed debt purchaser, and stating unlicensed entity "may only collect the general Pennsylvania usury rate of 6% simple interest *per annum* and may not impose any other charges").

27. When loans are sold from CDCA licensees to unlicensed debt buyers without approval, the sales have an illegal purpose and are void and unenforceable. *Zirpoli v. Midland Funding LLC*, No. 19-cv-1428, 2021 U.S. Dist. LEXIS 125923, at *18-20 (M.D. Pa. July 7, 2021) (finding alleged loan sale from CDCA licensee to unlicensed debt buyer void and refusing to allow debt buyer to enforce the loan contract); *Mellish v. CACH, LLC*, No. 19-cv-1217, 2020 U.S. Dist. LEXIS 52383, at *11 (W.D. Pa. March 26, 2020) (finding alleged loan sale from CDCA licensee to unlicensed debt buyer had "an illegal purpose" and was "therefore void and unenforceable"); Exhibit 1, p. 13 ("[A] CDCA loan contract that has been bought by a person not holding a CDCA license and not otherwise authorized to buy CDCA loan contracts may be declared void."); *see also Zirpoli*, 2021 U.S. Dist. LEXIS 125923, at *13-20 (discussing CDCA framework and the unlicensed purchase and collection of CDCA loans); *Mellish*, 2020 U.S. Dist. LEXIS 52383, at *5-12 (same); Exhibit 1, pp. 6-22 (same); *Amer. Ass'n of Meat Processors v. Casualty Reciprocal Exch.*, 588 A.2d 491, 495 (Pa. 1991) ("[A]n agreement which violates a provision of a statute, or which cannot be performed without violation of such a provision, is illegal and void."); *Dippel v. Brunozzi*, 74 A.2d 112, 114 (Pa. 1950) (same); *Paul v. Paul*, 109 A.

674, 675 (Pa. 1920) ("[W]hether the plaintiff required the aid of an illegal transaction to establish his case, and if he cannot prove his case without showing he has broken the law or participated in a fraudulent transaction, the court will not assist him."); *Lipman v. Cortazzo*, 19 Pa. D. & C. 3d 287, 291 (C.P. Lackawanna 1980) ("A contract which is expressly within the prohibition of a statute is void, even though the statute does not declare … all such contracts … void."); *Baldwin v. Safeguard Inv. Co.,* 10 Pa. D. & C. 3d 505, 524 (C.P. Allegheny 1977) ("An agreement which violates provisions of a statute or which cannot be performed without violation of such provisions is illegal and void.").

28.     Actions taken pursuant to void assignments or debts have no legal effect. *See, e.g.*, *Harris v. Harris*, 239 A.2d 783 (Pa. 1967) (holding judgment obtained on void contract itself void); *R&R Trucking Co. v. Lewis Steel Prods. Corp.*, 225 A.2d 687 (Pa. 1967) (same); *Baldwin v. Safeguard Inv. Co.*, 10 Pa. D. & C. 3d 505, 525-26 (C.P. Allegheny 1977) (same).

29.     Purchasing and attempting to collect a CDCA loan without the required licensure or approval, or even attempting to collect interest and fees that an entity cannot charge, collect, contract for, or receive without a CDCA license, is a misdemeanor. 7 P.S. § 6218.

## FACTUAL ALLEGATIONS

### *Velocity's Licensing Status in Pennsylvania*

30.     Before June 2019, Velocity was not licensed to collect debt in Pennsylvania.

31.     In June 2019, Velocity obtained a "collector-repossessor" license.

32.     This license was issued under Chapter 62 of the Consumer Credit Code (the "CCC"). 12 Pa. C.S. § 6202.

33.     This license allowed Velocity to repossess cars. 12 Pa. C.S. § 6252.

34.     In October 2019, Velocity obtained a "sales finance" license.

35. This license was issued under the CCC. 12 Pa. C.S. § 6202.

36. This license allowed Velocity to buy car loans and charge, collect, contract for, or receive up to 18% interest on new car loans, up to 21% interest on used car loans, late fees that do not exceed 2% of a past due payment on a car loan, and other types of charges and fees on car loans. 12 Pa. C.S. §§ 6241, 6242, 6243, 6244.

37. In July 2020, Velocity obtained a "consumer discount company" license.

***Velocity's Alleged Purchase of the Class Accounts***

38. Before obtaining a CDCA license in July 2020, Velocity purchased thousands of personal loans from the CDCA Lenders (the "Class Accounts").

39. The Class Accounts uniformly included previously charged or precomputed interest and fees that aggregated in excess of six percent simple interest per year, which is the general usury limit on a personal loan for non-banks that do not have a CDCA license and that are not otherwise authorized to charge interest and fees at the rates or amounts authorized by the CDCA. *Compare* 7 P.S. § 6203.A, *with* 41 P.S. § 201(a).

40. The CDCA Lenders were licensed as consumer discount companies under the CDCA when they issued the Class Accounts to Plaintiffs and the class members.

41. The CDCA Lenders were licensed as consumer discount companies under the CDCA when they sold the Class Accounts to Velocity.

42. Velocity did not hold a CDCA license when it purchased the Class Accounts.

43. And neither Velocity nor the CDCA Lenders, including OneMain and at least two other lenders, obtained prior written approval from the Department for the alleged sale or purchase of the CDCA Class Accounts.

*Velocity's Attempt to Collect the Class Accounts*

44.     After purchasing the Class Accounts without the required licensure or approval, Velocity began attempting to collect the Accounts.

45.     Velocity attempted to collect the Class Accounts by sending letters, calling consumers, and filing lawsuits.

46.     Velocity failed to disclose in any of its letters or phone calls that it did not have the licensure or approval required to buy or collect the Class Accounts.

47.     Nor did Velocity disclose in any of the lawsuits it filed that it did not have the licensure or approval required to buy or collect the Class Accounts.

48.     With respect to Plaintiffs, Velocity filed suit against each of them.

49.     Velocity sued Plaintiffs on July 2, 2019 (Jackson), June 27, 2019 (Creveling), September 25, 2019 (Hans), and November 26, 2019 (Aikens). *See Velocity Investments LLC v. Jackson*, CV-187-19 (MDJ 23-2-03); *Velocity Investments LLC v. Creveling*, CV 196-19 (MDJ 26-3-02); *Velocity Investments LLC v. Hans*, CV-263-19 (MDJ 29-3-02); *Velocity Investments LLC v. Aikens*, CV-258-19 (MDJ 23-2-02).

50.     With respect to Plaintiffs, Velocity sought to collect loan balances of $2,490.98 (Jackson), $9,432.36 (Creveling), $10,529.47 (Hans), and $3,911.38 (Aikens) on the OneMain Accounts.

51.     The complaints filed against Plaintiffs, like every other complaint Velocity filed, and similar to every other call and letter Velocity made or sent in an attempt to collect the Class Accounts, failed to disclose that Velocity did not have the required licensure or approval to buy or collect Plaintiffs' Accounts.

52.     With respect to Plaintiff Aikens, he entered a defense, incurred personal expenses related to appearing at trial, retained counsel, incurred $4,468.60 in legal fees, and, after trial on March 10, 2020, obtained judgment in his favor and against Velocity, with the judgment having been entered March 16, 2020.

53.     With respect to Plaintiff Jackson, she did not enter a defense in the case filed against her.

54.     Velocity obtained a default judgment against Plaintiff Jackson on September 20, 2019, in an amount of $2,652.63.

55.     With respect to Plaintiff Creveling, he agreed to make payments to Velocity before a judgment was entered and, therefore, did not enter a defense in the case filed against him.

56.     Velocity obtained a default judgment against Plaintiff Creveling on July 31, 2019, in an amount of $9,619.11

57.     Plaintiff Creveling paid $3,000.00 to Velocity before the default judgment and paid $1,980.00 after the judgment was entered.

58.     With respect to Plaintiff Hans, she agreed to make payments to Velocity before a judgment was entered and, therefore, did not enter a defense in the case filed against her.

59.     Velocity obtained a judgment against Plaintiff Hans on December 5, 2019, in an amount of $10,529.47.

60.     Plaintiff Hans paid $1,200.00 after the judgment was entered against her.

61.     It was false, deceptive, misleading, unfair, and unconscionable for Velocity to attempt to collect the Class Accounts without the required licensure or approval to buy or collect the Class Accounts.

62. Some class members, like Plaintiff Creveling and Hans, made payments on the Class Accounts as a result of Velocity's false, deceptive, misleading, unfair, and unconscionable debt collection activities.

63. Had Velocity not attempted to collect the Class Accounts without the required licensure or approval, none of these payments would have been made.

64. Other class members, like Plaintiff Aikens, hired legal counsel and incurred expenses as a result of Velocity's false, deceptive, misleading, unfair, and unconscionable debt collection activities.

65. Had Velocity not attempted to collect the Class Accounts without the required licensure or approval, no consumer would have been forced to pay an attorney money to defend the lawsuit filed against them.

66. And yet other class members, like Plaintiff Jackson, Creveling, and Hans had (and still have) judgments entered against them as a result of Velocity's false, deceptive, misleading, unfair, and unconscionable debt collection activities.

67. Had Velocity not attempted to collect the Class Accounts without the required licensure or approval, no consumer would have had a judgment entered against them on an assignment that has an illegal purpose and that is void and unenforceable, and/or on a loan that is void and/or unenforceable.

68. Velocity continues to hold the Class Accounts, continues to collect them, and continues to have outstanding judgments on the Class Accounts.

***Velocity Knew Its Conduct Was Unlawful***

69. Velocity knew it lacked the licensure to buy or collect the Class Accounts.

70. Velocity did not apply for a CDCA license until sometime in 2020.

71.     Velocity did not obtain a CDCA license until July 3, 2020.

72.     Since Velocity did not apply for or obtain a CDCA license before 2020, Velocity was not under the mistaken belief that it possessed the license required to buy or collect the Class Accounts.

73.     Velocity also knew it lacked approval to buy or collect the Class Accounts.

74.     Velocity never requested prior written approval from the Pennsylvania Department of Banking to buy or collect the Class Accounts at any time prior to obtaining a CDCA License.

75.     Velocity also did not believe the CDCA Lenders obtained the required approval to sell the Class Accounts, nor did Velocity ask whether the CDCA Lenders had done so.

76.     Since Velocity did not request approval from the Department, and did not believe the CDCA Lenders had done so, Velocity was not under the mistaken belief that it possessed the approval required to buy or collect the CDCA Class Accounts.

***Velocity Continued Violating the Law Despite Knowing It Was Acting Unlawfully***

77.     The CDCA plainly states that approval is required for unlicensed loan sales. 7 P.S. § 6214.I.

78.     Given that the CDCA was enacted in 1937, and given its plain language, Velocity should have known its conduct was unlawful.

79.     Additionally, as early as 2001, the Department made public that debt buyers, like Velocity, must be licensed under the CDCA to buy or collect CDCA loans, like the Class Accounts. *See* Exhibit 1, pp. 6-22.

80.     At the same time, the Department also made public that unlicensed debt buyers, like Velocity, must obtain prior written approval to buy or collect CDCA loans, like the Class Accounts. *Id.*

81.     Given this publicly available guidance, Velocity should have known the conduct at issue in this case was unlawful.

82.     Finally, since 2019, attorney Kevin Abramowicz put Velocity on notice that it did not have the required licensure or approval to buy or collect the Class Accounts.

83.     Since 2019, attorney Abramowicz filed over fifteen lawsuits against Velocity, all of which, like this lawsuit, alleged that Velocity did not have the licensure or approval to buy or collect personal consumer loans. *See, e.g.*, *Lowry v. Velocity Investments, LLC*, No. GD-20-7188 (C.P. Allegheny); *Lorenzi v. Velocity Investments, LLC*, No. 2020-2132 (C.P. Cambria); *Craver v. Velocity Investments, LLC*, No. 225-2020 (C.P. Greene); *Muddiman v. Velocity Investments, LLC*, No. 2020-234 (C.P. Crawford); *David v. Velocity Investments, LLC*, No. 2020-CV-5433 (C.P. Dauphin); *Reed et al v. Velocity Investments, LLC*, No. 11025-CD-2020 (C.P. Indiana); *Stimely v. Velocity Investments, LLC*, No. 336-2020 (C.P. Mifflin), *on removal*, No. 20-cv-596 (M.D. Pa.); *Wood v. Velocity Investments, LLC*, No. 2020-2551 (C.P. Northampton), *on removal*, No. 20-cv-2256 (E.D. Pa.); *Kissel v. Velocity Investments, LLC*, No. 2020-3637 (C.P. Northampton); *Lutz v. Velocity Investments, LLC*, S-916-20 (C.P. Schuylkill); *Bell v. Velocity Investments, LLC*, No. 20-cv-30 (W.D. Pa.); *Havrilesko v. Velocity Investments, LLC*, No. 20-cv-255 (W.D. Pa.); *McPeak v. Velocity Investments, LLC*, No. 20-cv-207 (W.D. Pa.); *Bastolla v. Velocity Investments, LLC*, No. 20-cv-570 (W.D. Pa.); *Woodley v. Velocity Investments, LLC*, No. 20-cv-96 (W.D. Pa.); *Reiser v. Velocity Investments, LLC*, No. 19-cv-1024 (W.D. Pa.); *Meola v. Velocity Investments, LLC*, No. 19-cv-997 (W.D. Pa.).

84.     Additionally, since 2019, attorney Abramowicz defended more than twenty Pennsylvanians against Velocity's unlawful collection practices. *See, e.g.*, *Velocity Investments, LLC v. Wood*, CV-209-19 (MDJ 03-2-06); *Velocity Investments, LLC v. Reiser*, CV-46-19 (MDJ 05-2-03), *on appeal*, AR-19-2187 (C.P. Allegheny); *Velocity Investments, LLC v. Horner*, CV-59-20 (MDJ 05-2-06); *Velocity Investments, LLC v. Wheeler*, CV-88-20 (MDJ 05-2-06); *Velocity Investments, LLC v. Daniel*, CV-279-19 (MDJ 05-2-16); *Velocity Investments, LLC v. Brady*, CV-35-19 (MDJ 05-2-20); *Velocity Investments, LLC v. Woodley*, CV-140-19 (MDJ 05-2-22); *Velocity Investments, LLC v. Bright*, CV-245-19 (MDJ 05-2-23); *Velocity Investments, LLC v. Wilson*, CV-326-19 (MDJ 05-2-31); *Velocity Investments, LLC v. Akut*, No. CV-46-20 (MDJ 05-2-32); *Velocity Investments, LLC v. Lowry*, CV-304-19 (MDJ 05-2-38), *on appeal*, AR 20-1345 (C.P. Allegheny); *Velocity Investments, LLC v. Mondine*, CV-259-19 (MDJ 05-3-13); *Velocity Investments, LLC v. Taylor*, CV-32-20 (MDJ 07-1-04); *Velocity Investments, LLC v. Costantini*, CV-11-20 (MDJ 15-1-02); *Velocity Investments, LLC v. Briggs*, CV-26-20 (MDJ 21-3-05); *Velocity Investments, LLC v. Dauberman*, CV-123-19 (MDJ 25-3-01); *Velocity Investments, LLC v. Teagarden*, CV-140-19 (MDJ 27-3-02); *Velocity Investments, LLC v. Candito*, CV-45-20 (MDJ 36-2-02), *on appeal*, No. 10645-2020 (C.P. Beaver); *Velocity Investments, LLC v. Corl*, CV-105-19 (MDJ 38-1-06); *Velocity Investments, LLC v. Rothrauff*, CV-194-2018 (MDJ 47-3-03), *on appeal*, No. 2019-1171 (C.P. Cambria); *Velocity Investments, LLC v. Stimely*, CV-74-19 (MDJ 58-3-03); *Velocity Investments, LLC v. Updyke*, No. 2019-6065 (C.P. Cambria); *Velocity Investments, LLC v. Furfari*, No. 2019-660 (C.P. Cambria).

85.     Through these defense actions, attorney Abramowicz prevented many fraudulent and void judgments from being entered against Pennsylvania consumers on personal loans that Velocity bought and attempted to collect without the required licensure or approval.

86. Despite being notified ***at least thirty-five times*** of its unlawful activities, despite knowing it did not have a CDCA license to buy or collect the Class Accounts, despite knowing it did not have prior written approval from the Department to buy or collect the Class Accounts, despite the plain language of the CDCA, and despite the Department's decades old public statements concerning the illegality of Velocity's debt buying and collection activities, Velocity continued to attempt to collect the Class Accounts from Plaintiffs and the class members without licensure or approval to do so.

87. And despite all of this, Velocity continues to hold many of the Class Accounts, continues to collect them, and continues to hold judgments over the heads of many of the class members.

## CLASS ACTION ALLEGATIONS

88. Plaintiffs bring this action individually and on behalf of all others similarly situated under Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure.

89. Plaintiffs seek to certify the following classes:

**The FDCPA Class**

All persons who: i) were issued a loan in Pennsylvania; ii) had an entity with a CDCA license sell the loan to Velocity before July 2, 2020, without the prior written approval of the Department; and iii) were sued by Velocity on the loan on or after May 4, 2019, paid money to Velocity, either directly or indirectly, on the loan on or after May 4, 2019, or were otherwise contacted by Velocity on the loan on or after May 4, 2019.

**The FCEUA Class**

All persons who: i) were issued a loan in Pennsylvania; ii) had an entity with a CDCA license sell the loan to Velocity before July 2, 2020, without the prior written approval of the Department; and iii) paid money to Velocity, either directly or indirectly, on or after May 4, 2018, or paid or incurred attorneys' fees or expenses on or after May 4, 2018, to defend against any attempt by Velocity to collect the loan.

**The UTPCPL Class**

All persons who: i) were issued a loan in Pennsylvania; ii) had an entity with a CDCA license sell the loan to Velocity before July 2, 2020, without the prior written approval of the Department; and iii) paid money to Velocity, either directly or indirectly, on or after May 4, 2014, or paid or incurred attorney's fees or expenses on or after May 4, 2014, to defend against any attempt by Velocity to collect the loan.

**The Restitution Class**

All persons who: i) were issued a loan in Pennsylvania; ii) had an entity with a CDCA license sell the loan to Velocity before July 2, 2020, without the prior written approval of the Department; and iii) paid money to Velocity, either directly or indirectly, on or after May 4, 2016.

**The Collection Class**

All persons who: i) were issued a loan in Pennsylvania; ii) had an entity with a CDCA license sell the loan to Velocity before July 2, 2020, without the prior written approval of the Department; and iii) did not pay the loan in full, or did not discharge the loan by way of settlement, judgment, bankruptcy, or otherwise.

90.     Excluded from each class would be (1) Defendant, Defendant's agents, subsidiaries, parents, successors, predecessors, and any entity in which Defendants or its parents have a controlling interest, and those entities' current and former employees, officers, and directors; (2) the Judge to whom this case is assigned and the Judge's immediate family; (3) any person who executes and files a timely request for exclusion from the Class; (4) any persons who have had their claims in this matter finally adjudicated and/or otherwise released; and (5) the legal representatives, successors and assigns of any such excluded person.

91.     Plaintiffs reserve the right to expand, narrow, or otherwise modify the classes as the litigation continues and discovery proceeds.

92.     Fed. R. Civ. P. 23(a)(1): The classes are so numerous that joinder of the class members is impracticable. There are hundreds to thousands of members of each class. Each class member is identifiable by the records of Defendant, the CDCA Lenders, and/or the courts.

93.     Fed. R. Civ. P. 23(a)(2), (b)(3): Plaintiffs and the class members share numerous common questions of law and fact that will drive the resolution of the litigation and predominate over any individual issues. For example, there is a single common answer to the question of whether it was unlawful for Velocity to attempt to collect loans without a CDCA license or approval from the Department. Similarly, there is a single common answer to whether Plaintiffs can recover money paid to Velocity or an attorney as a result of Velocity's attempt to collect loans without the required licensure or approval. These, and other common questions of law and fact, predominate over any individual issues.

94.     Fed. R. Civ. P. 23(a)(3): Plaintiffs' claims are typical of the claims of the classes because the claims of Plaintiffs and the classes are based on the same legal theories and arise from the same conduct.

95.     Fed. R. Civ. P. 23(a)(4): Plaintiffs are adequate representatives of the classes because the interests of Plaintiffs and the class members align. Plaintiffs will fairly, adequately, and vigorously represent and protect the interests of the classes and have no interest antagonistic to the classes. Plaintiffs retained counsel who are competent and experienced in the prosecution of class action litigation generally and FDCPA litigation specifically.

96.     Fed. R. Civ. P. 23(b)(3): Given the complexity and nature of the issues presented and the relief requested, the expense and time necessary to obtain such relief, and the anticipated recovery and relief, a class action is the most efficient litigation method to adjudicate the claims of Plaintiffs and the class members. Additionally, requiring Plaintiffs and the class members to

file individual actions would impose a crushing burden on the court system and almost certainly lead to inconsistent judgments. By contrast, class treatment presents far fewer management difficulties and provides benefits of a single adjudication and economies of scale.

97.     Fed. R. Civ. P. 23(b)(2): Velocity has acted or refused to act on grounds that apply generally to the classes, such that final injunctive, equitable, or declaratory relief is appropriate respecting the classes as a whole. The injunctive, equitable, and declaratory relief requested herein applies equally to Plaintiffs and the class members.

**COUNT I**
**Violation of the Fair Debt Collection Practices Act**
**15 U.S.C. §§ 1692, *et seq.***

98.     Plaintiffs repeat and re-allege all prior allegations as if set forth at length herein.

99.     This claim is brought individually and on behalf of the FDCPA Class.

100.    Plaintiffs and the class members are consumers under the FDCPA, the Class Accounts are debts under the FDCPA, and Velocity is a debt collector under the FDCPA. 15 U.S.C. §§ 1692a(3), (5), (6).

101.    Velocity's actions and practices described herein constitute as: false, deceptive or misleading representations or means in connection with the collection of a debt, in violation of 15 U.S.C. § 1692e; and/or unfair or unconscionable means to collect or attempt to collect a debt, in violation of 15 U.S.C. § 1692f.

102.    As a result of Velocity's failure to comply with the provisions of the FDCPA, and the resulting injury and harm Velocity's failure caused, Plaintiffs and the class members are entitled to actual damages, statutory damages, and attorneys' fees and costs under 15 U.S.C. § 1692k.

## COUNT II
### Violation of the Fair Credit Extension Uniformity Act
### 73 P.S. §§ 2270.1, *et seq.*

103.    Plaintiffs repeat and re-allege all prior allegations as if set forth at length herein.

104.    This claim is brought individually and on behalf of the  FCEUA Class.

105.    Plaintiffs and the class members are consumers under the FCEUA, the Class Accounts are debts under the FCEUA, and Velocity is a debt collector or creditor under the FCEUA. 73 P.S. § 2270.3.

106.    In the event Velocity is a debt collector, its actions and practices described herein constitute as unfair and/or deceptive debt collection acts or practices under the FCEUA because they violate 15 U.S.C. §§ 1692e and/or 1692f, as explained above. 73 P.S. § 2270.4(a).

107.    In the event Velocity is a creditor, its actions and practices described herein constitute as unfair or deceptive debt collection acts or practices under the FCEUA because they constitute as: false, deceptive or misleading representations or means in connection with the collection of a debt; and/or unfair or unconscionable means to collect or attempt to collect a debt. 73 P.S. § 2270.4(b).

108.    Velocity's use of unfair or deceptive debt collection acts or practices under the FCEUA constitutes violations of the UTPCPL. 73. P.S. § 2270.5(a).

109.    Plaintiffs and the class members lost money or property as a result of Velocity's violations and therefore are entitled to actual damages, statutory damages, treble damages, and attorneys' fees and costs under 73 P.S. § 201-9.2.

**COUNT III**
**Violation of the Unfair Trade Practices and Consumer Protection Law**
**73 P.S. §§ 201-1, *et seq.***

110.    Plaintiffs repeat and re-allege all prior allegations as if set forth at length herein.

111.    This claim is brought individually and on behalf of the UTPCPL Class.

112.    Velocity, Plaintiffs, and the class members are persons under the UTPCPL, the Class Accounts arose from the purchase or lease of goods or services primarily for personal, family or household purposes under the UTPCPL, and Velocity's actions and practices described herein were conduct as part of trade or commerce under the UTPCPL. 73 P.S. §§ 201-2(2)-(3), 201-9.2.

113.    Velocity's actions and practices described herein constitute unfair methods of competition and unfair or deceptive acts or practices under the UTPCPL because Velocity is engaging in fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding. 73 P.S. § 201-2(4)(xxi).

114.    Velocity's use of unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce violates 73 P.S. § 201-3.

115.    Plaintiffs and the class members lost money or property as a result of Velocity's violations and therefore are entitled to actual damages, statutory damages, treble damages, and attorneys' fees and costs under 73 P.S. § 201-9.2.

**COUNT IV**
**Violations of the Consumer Discount Company Act**
**7 P.S. §§ 6201, *et seq.***

116.    Plaintiffs repeat and re-allege all prior allegations as if set forth at length herein.

117.    This claim is brought individually and on behalf of the Restitution and Collection Classes.

118.     Velocity continues to collect the Class Accounts while violating the CDCA.

119.     Velocity was not licensed under the CDCA until July 2020.

120.     Accordingly, Velocity was required to obtain prior written approval from the Department to buy and collect the CDCA Class Accounts. 7 P.S. § 6214.I ("A licensee may not sell contracts to a … corporation not holding a [CDCA] license … without the prior written approval of the Secretary of Banking.").

121.     Without such approval, Velocity could not buy or collect the CDCA Class. Accounts. *Zirpoli*, 2021 U.S. Dist. LEXIS 125923, at *19-20; *Mellish*, 2020 U.S. Dist. LEXIS 52383, at *9-10; Exhibit 1, p. 13.

122.     Velocity did not obtain such approval.

123.     By attempting to buy and collect loans without the required licensure or approval, Velocity violated and is continuing to violate Section 6214 of the CDCA.

124.     Velocity's past and ongoing violations are considered misdemeanors under the CDCA. *See* 7 P.S.  6218.

125.     Equitable relief is available to private plaintiffs for CDCA violations. *See Mellish*, No. 19-cv-1217, 2020 U.S. Dist. LEXIS 52383, at *7.

126.     Plaintiffs accordingly request that the court enjoin Velocity from continuing to collect any part of the Class Accounts.

127.     Plaintiffs additionally request restitution for any money paid to Velocity on the Class Accounts.

128.     Finally, Plaintiffs request that the Court declare the Class Accounts void, or alternatively, unenforceable, and that the assignments concerning the Class Accounts have an illegal purpose and are void and unenforceable.

129.     Velocity's actions have caused irreparable injury to Plaintiffs and the class members in the form of monetary harm, damage to the reputation and credit ratings of Plaintiffs and the class members, and emotional distress.

130.     Velocity will continue to cause harm to Plaintiffs and the class members by continuing to collect the Class Accounts from Plaintiffs and the class members.

131.     The remedies at law are inadequate to compensate for these injuries.

132.     The balance of hardships between Plaintiffs and the class members and Velocity warrant equitable relief, as Velocity defrauded Plaintiffs and the class members and Velocity continues to attempt to collect loans without the required licensure or approval to do so.

133.     The public interest will be served through injunctive and declaratory relief, as such equitable relief will prevent Velocity from continuing to violate the rights of Plaintiffs and the class members.

134.     Accordingly, Plaintiffs, individually and on behalf of the classes, request the following relief: i) a declaration that Velocity did not have a CDCA the license when it bought the Class Accounts; ii) a declaration that neither Velocity nor the CDCA Lenders had the prior written approval of the Department Banking when the Class Accounts were bought or sold; iii) an order that permanently enjoins Velocity from taking any action to attempt to collect the Class Accounts from Plaintiffs and the class members; iv) an order requiring Velocity to vacate any outstanding judgments, liens, garnishments, or any other judicial enforcement actions against Plaintiffs and the class members, or alternatively, notifying Plaintiffs and the Class Members that they may file petitions to open and/or strike any outstanding judgments, liens, garnishments, or any other judicial enforcement actions; v) a declaration that the Class Accounts are void, or alternatively, unenforceable; vi) a declaration that the assignments concerning the Class

Accounts are void, or alternatively, unenforceable; and vii) an order providing Plaintiffs and the class members restitution for any money paid to or otherwise received by Velocity on the Class Accounts.

**COUNT V**
**Unjust Enrichment**

135.     Plaintiffs repeat and re-allege all prior allegations as if set forth at length herein.

136.     This claim is brought individually and on behalf of the Restitution and Collection Classes.

137.     Plaintiffs and the class members conferred a benefit on Velocity by making payments to Velocity on the Class Accounts.

138.     Velocity has appreciated these benefits by accepting and continuing to accept Plaintiffs' and the class members' payments on the Class Accounts.

139.     It would be inequitable for Velocity to retain these benefits, or continue to attempt to collect these benefits, as Velocity bought and collected the Class Accounts without the licensure or approval required by law to do so.

140.     Accordingly, Plaintiffs, individually and on behalf of the classes, request the following relief: i) a declaration that Velocity did not have a CDCA license when it bought the Class Accounts; ii) a declaration that neither Velocity nor the CDCA Lenders had the prior written approval of the Department Banking when the Class Accounts were bought or sold; iii) an order that permanently enjoins Velocity from taking any action to attempt to collect the Class Accounts from Plaintiffs and the class members; iv) an order requiring Velocity to vacate any outstanding judgments, liens, garnishments, or any other judicial enforcement actions against Plaintiffs and the class members, or alternatively, notifying Plaintiffs and the Class Members that they may file petitions to open and/or strike any outstanding judgments, liens, garnishments, or

any other judicial enforcement actions; v) a declaration that the Class Accounts are void, or alternatively, unenforceable; vi) a declaration that the assignments concerning the Class Accounts are void, or alternatively, unenforceable; and vii) an order providing Plaintiffs and the class members restitution for any money paid to or otherwise received by Velocity on the Class Accounts.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for the following relief:

a. An order certifying the proposed classes, appointing Plaintiffs as the class representatives, and appointing undersigned counsel as class counsel;

b. An order awarding actual, statutory, treble, nominal, and all other damages available by law, along with pre- and post-judgment interest;

c. An order awarding restitution for any money paid to or received by Velocity on the Class Accounts;

d. An order awarding attorney's fees and costs;

e. An order declaring that Velocity did not a CDCA license when it bought the Class Accounts;

f. An order declaring that neither Velocity nor the CDCA Lenders had the prior written approval from the Department when the Class Accounts were bought or sold;

g. An order permanently enjoining Velocity from taking any action to collect the Class Accounts;

h. An order requiring Velocity to vacate any outstanding judgments, liens, garnishments, or any other judicial enforcement actions against Plaintiffs and the class members, or alternatively, notifying Plaintiffs and the class members that they may file petitions to open and/or strike any outstanding judgments, liens, garnishments, or any other judicial enforcement actions;

i. An order declaring the Class Accounts void, or alternatively, unenforceable;

j. An order declaring the assignments concerning the Class Accounts void, or alternatively, unenforceable;

k. An order awarding all other and further relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury on all issues so triable.

Respectfully submitted,

Dated: August 5, 2021        By:   */s/ Kevin Abramowicz*

Kevin Abramowicz
Pa. I.D. No. 320659
Kevin W. Tucker
Pa. I.D. No. 312144
Stephanie Moore
Pa. I.D. No. 329447
Chandler Steiger
Pa. I.D. No. 328891
**EAST END TRIAL GROUP LLC**
6901 Lynn Way, Suite 215
Pittsburgh, PA 15208
Tel: (412) 223-5740
Fax: (412) 626-7101
kabramowicz@eastendtrialgroup.com
ktucker@eastendtrialgroup.com
smoore@eastendtrialgroup.com
csteiger@eastendtrialgroup.com

Marc Dann
*Admitted Pro Hac Vice*
Brian D. Flick
*Admitted Pro Hac Vice*
**DANNLAW**
15000 Madison Avenue
Lakewood, OH 44107
Tel: (216) 373-0539
Fax: (216) 373-0536
notices@dannlaw.com

Joseph M. Adams
Pa. I.D. 58430
200 Highpoint Drive
Suite 211A
Chalfont, PA 18914
Tel: (215-996-9977)
josephmadamsesq@verizon.net

*Attorneys for Plaintiffs*